IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. DAVID HARRIS (#B-70088), | ) ) ) | |
| Petitioner, | ) ) | Case No. 07 C 0454 |
| v. | ) ) | |
| TERRY MCCANN, Warden, Stateville Correctional Center, | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On January 24, 2007, Petitioner David Harris, by counsel, filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). On March 13, 2007, the Court granted

Harris' motion to dismiss his original habeas petition and accepted Harris' pro se habeas

petition. In response, Respondent filed a motion to dismiss certain claims as unexhausted after

which Harris voluntarily dismissed his unexhausted claims. Before the Court is Harris' petition

for a writ of habeas corpus. For the following reasons, the Court grants Harris' request for an

evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2) regarding his ineffective assistance of

counsel claim based on counsel's failure to investigate and present mitigation evidence at the

second stage of his capital sentencing hearing. The Court denies the remainder of Harris' claims

in his habeas petition.

## BACKGROUND

Harris does not present clear and convincing evidence challenging the statement of facts

as set forth in the Supreme Court of Illinois' opinion affirming the judgment of the Circuit Court

of Cook County, and thus the Court presumes those facts are correct for purposes of its habeas review.  *See* 28 U.S.C. § 2254(e)(1); *see also Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007).  The Court, therefore, adopts the underlying facts as set forth by the Supreme Court of Illinois in Harris' direct appeal.  *See People v. Harris,* 182 Ill.2d 114, 230 Ill.Dec. 957, 695 N.E.2d 447 (Ill. 1998) ("*Harris I*").  The Court begins with a brief recounting of the facts as determined by the Supreme Court of Illinois.  *See Easley v. Frey,* 433 F.3d 969, 970 (7th Cir. 2006).

## I.    Factual Background

At Harris' jury trial, Bernice Chase, the widow of the victim, Clifford Chase, testified that her husband left the house around 8:40 p.m. on June 7, 1993, to return a rented videotape. Mrs. Chase explained that her husband would sometimes stop to purchase milk at the Chatham Food Center in Chicago, Illinois, where he was killed.  Theresa Barnes, who was 16-years-old at the time of the occurrence, testified at trial that she was at the Chatham Food Center around 9 p.m. on June 7, 1993.  While she was using a pay telephone outside the store, Barnes heard the sound of a gunshot.  She looked up and saw someone holding a gun after which she heard another shot.  Barnes testified that the shot was fired at a car and that she saw the person inside the car slump over.  Barnes further testified that the person who fired the shot got in the back seat of a Mercedes which then drove off.   Barnes testified that she was standing about 20 to 25 feet away from the car when the shots were fired and that she got a good look at the gunman.  On June 9, 1993, police officers showed Barnes a brochure of various Mercedes models, and Barnes selected one that matched the car she had seen.  On June 15, 1993, Barnes viewed a photographic lineup and identified Petitioner David Harris as the person who had fired the shots.

At trial, Barnes identified Harris as the gunman.

Theodore Traylor, who was with Harris on June 7, 1993, also testified at Harris' jury trial. Traylor stated that on June 7, 1993, around 8:30 p.m., he was standing at 67th and Ada Streets in Chicago, Illinois, with Antoine Moore. At that time, some of Moore's friends drove up in a grey Mercedes. In the car were Harris, Howard McClinton, and Demetrius Daniels. After these individuals talked to Moore, Moore told Traylor to get in the car and they would take him home. McClinton was driving and Moore sat in the front seat. Traylor testified that Daniels, Harris, and he sat in the back seat. According to Traylor, the four others talked about a carjacking movie they had seen.

Thereafter, McClinton saw some girls to whom he wanted to talk. McClinton pulled into a parking lot, but the girls did not want to talk to him. Then, McClinton said, "There go a jack move there." According to Traylor, McClinton drove toward an elderly man who was leaving a grocery store. The man got in his car, and McClinton pulled the Mercedes near the man's car. Traylor testified that McClinton handed Moore a gun and said, "jack him." Moore got out of the Mercedes and tapped on the window of the victim's car, but the man would not open the door. Moore got back in the Mercedes. Harris then jumped out of the car, pulled a gun from under his shirt, and fired two shots at the victim. Harris jumped back into the car, and the Mercedes drove away.

## II.     Procedural Background

On August 30, 1995, following a jury trial in the Circuit Court of Cook County, a jury convicted Harris of first degree murder and attempted armed robbery. (R. 33-1, Resp.'s Rule 5 Exs., Ex. A.) Harris waived a jury for purposes of his capital sentencing hearing. (*Id*.) After the

sentencing hearing, the trial judge sentenced Harris to the death penalty. (*Id*.) Because Harris was sentenced to death, he directly appealed his conviction and sentence to the Supreme Court of Illinois. On direct appeal, Harris raised the following issues: (1) trial counsel was ineffective for failing to investigate or present mitigation evidence at the second stage of his capital sentencing hearing; (2) trial counsel was ineffective for conceding Harris' death penalty eligibility, especially because the State did not specify a relevant aggravating factor and Harris never consented on the record to the concession; (3) no statutory aggravating factor for death penalty eligibility was explicitly found beyond a reasonable doubt; (4) the State failed to prove beyond a reasonable doubt that Harris took a substantial step toward committing armed robbery, multiple convictions were improperly carved from the same act, and eligibility for the death penalty was derived from an improper double enhancement; (5) the State erred in introducing testimony that the vehicle in which Harris was in on the night of the murder was stolen; (6) trial counsel was ineffective for failing to move to bar evidence of other crimes or to object to their admission and for eliciting evidence that there was a bloodstain in the vehicle; (7) trial counsel was ineffective for failing to move to suppress an allegedly suggestive photographic lineup, and Harris was denied due process because the State lost the lineup photographs prior to trial; and (8) Harris was denied due process and a fair trial due to the admission of inculpatory statements that were obtained in violation of the Illinois Habeas Corpus Act and the Cook County Jail Act. (Exs. A-C.)

The Supreme Court of Illinois affirmed Harris' conviction and sentence on direct appeal. The Supreme Court concluded that the State proved beyond a reasonable doubt that Harris took a substantial step toward armed robbery because Harris and the other parties discussed the

carjacking and selected a victim, that separate convictions for murder and attempted armed robbery were appropriate based on the evidence, and that there was no improper double enhancement because the two convictions were based on separate acts. The Supreme Court of Illinois further concluded that the admission of evidence that a stolen vehicle was used in the crimes was not plain error, and Harris was not prejudiced by counsel's failure to object to this evidence and eliciting evidence of the bloodstain. In addition, the Supreme Court of Illinois concluded that Harris was not prejudiced by his counsel's failure to seek suppression of the lineup identification because the eyewitness' trial testimony was not based on the photographic lineup and there was other overwhelming evidence of Harris' guilt. The Supreme Court also concluded that Harris did not show that the State acted in bad faith in failing to preserve the lineup photographs. Further, the Supreme Court concluded that suppression of Harris' statements would not have been the appropriate remedy for any violation of the Illinois Habeas Corpus Act or the County Jail Act. Finally, the Illinois court did not examine whether counsel was constitutionally ineffective for failing to present and investigate mitigation evidence at Harris' capital sentencing hearing because the record before it was insufficient to make this analysis. *See People v. Harris,* 182 Ill.2d 114, 230 Ill.Dec. 957, 695 N.E.2d 447 (Ill. 1998).

Thereafter, Harris filed a petition for post-conviction relief pursuant to 725 ILCS 5/122-1, *et seq.*, alleging that: (1) his trial counsel was ineffective for failing to investigate or produce mitigation evidence at the capital sentencing hearing; and (2) trial counsel was ineffective for failing to investigate and produce exculpatory witnesses or evidence. (Exs. D-F.) On appeal, the Supreme Court of Illinois concluded that Harris' trial counsel was not ineffective for failing to investigate and present alibi evidence and that Harris did not show prejudice. *See People v.*

*Harris,* 206 Ill.2d 293, 306, 276 Ill.Dec. 286, 794 N.E.2d 181 (Ill. 2002) ("*Harris II*").  On the

other hand, after considering the mitigation evidence and affidavits provided, the Supreme Court

of Illinois concluded that Harris made a substantial showing that trial counsel was ineffective for

failing to investigate and produce mitigation evidence at his capital sentencing hearing.  *Id.* at

304-06.  The Supreme Court thus remanded Harris' case to the Circuit Court of Cook County for

an evidentiary hearing on this issue.

Before the Circuit Court held the evidentiary hearing, former Governor George Ryan

commuted Harris' death sentence to one of natural life imprisonment without the possibility of

parole as part of the governor's blanket commutation of all Illinois death sentences.  *See People*

*v. Harris,* 357 Ill.App.3d 330, 332, 293 Ill.Dec. 719, 828 N.E.2d 1217 (Ill. App. Ct. 2005)

("*Harris III*").  Thereafter, the Illinois post-conviction trial court dismissed Harris' post-

conviction petition as moot because Harris' claims were based on his death sentence.  *Id*.  Harris

appealed.  (Exs. G-I.)  The Illinois Appellate Court, First District, held that the governor's

commutation converted Harris' "judicially imposed sentence" into "an essentially unreviewable

executively imposed one."  *Harris III,* 357 Ill.App.3d at 333-36.  The appellate court also

concluded that Harris' request for clemency barred him from seeking a lower judicial sentence.

*Id.* at 336.  In his petition for leave to appeal ("PLA") to the Supreme Court of Illinois, Harris

raised his ineffective assistance of counsel claim about the mitigating evidence at his death

sentence hearing arguing that the issue was not moot.  (Ex. D).  The Supreme Court of Illinois

denied his PLA on January 25, 2006.  (Ex. E.)

On January 24, 2007, Harris filed a counseled habeas corpus petition pursuant to 28

U.S.C. § 2254(d)(1).  Subsequently, in March 2007, the Court allowed Harris to voluntarily

dismiss his counseled habeas petition and substitute his own pro se habeas petition, although

counsel still represents Harris. Reviewing Harris' pro se habeas petition liberally, *see Benders v.

Bellows & Bellows,* 515 F.3d 757, 767 (7th Cir. 2008), Harris raises the following ineffective

assistance of trial counsel claims: (1) trial counsel was ineffective for failing to investigate and

present mitigating evidence at his capital sentencing hearing; (2) trial counsel was ineffective for

conceding Harris' eligibility for the death penalty at his capital sentencing hearing; (3) trial

counsel was ineffective for failing to move to bar evidence of other crimes evidence and

evidence of a bloodstain in the vehicle Harris rode in on the night of the murder; (4) trial counsel

was ineffective for failing to move to suppress a photographic lineup; and (5) trial counsel was

ineffective for failing to interview or call available alibi witnesses. Harris' other habeas claims,

include: (1) the Supreme Court of Illinois erred in determining that violations of the Illinois

Habeas Corpus Act or the Cook County Jail Act did not warrant suppression of Harris'

inculpatory statements; (2) he was denied his right to a fair trial through the State's introduction

of testimony that the vehicle Harris rode in on the night of the murder was stolen; (3) the State

failed to prove beyond a reasonable doubt that he had committed attempted armed robbery and

that the attempted armed robbery and first degree murder convictions were improperly carved

from the same physical act, thus his death penalty eligibility was derived from an improper

double enhancement; and (4) he was denied due process of law because the State lost lineup

photographs.[1] (R. 13-1, Pro Se Habeas Pet.)

---

[1] Because Harris did not exhaust his last four habeas claims, Respondent moved to
dismiss Harris' habeas petition as unexhausted. Harris then moved to voluntarily dismiss these
unexhausted claims, which the Court granted. Thus, the Court will not consider Harris' last four
habeas claims, which include: (1) the waiver of his right to a jury at sentencing was not
knowingly and intelligently made; (2) the sentencing court improperly considered victim impact

## **LEGAL STANDARDS**

### I.     **Habeas Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Calloway v. Montgomery,* 512 F.3d 940, 943 (7th Cir. 2008); *see also Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 405; *Calloway,* 512 F.3d at 943.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Williams,* 529 U.S. at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 (an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law) (emphasis in original). To be considered objectively unreasonable, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Gilbert v.*

---

testimony from an unrelated offense; (3) cumulative error denied him due process and a fair trial; and (4) cumulative error denied him constitutionally effective assistance of counsel.

*Merchant,* 488 F.3d 780, 790 (7th Cir. 2007) (quoting *Hardaway v. Young,* 302 F.3d 757, 762

(7th Cir. 2002)).  Put differently, to be reasonable, a state court's decision must be "at least

minimally consistent with facts and circumstances of the case."  *Simpson v. Battaglia,* 458 F.3d

585, 592 (7th Cir. 2006).

## II.    Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies

available to him in state court.  *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005).  More

specifically, the "petitioner must establish that he fully and fairly presented his claims to the

state appellate courts, thus giving the state courts a meaningful opportunity to consider the

substance of the claims that he later presents in his federal challenge."  *Id.*; *see also O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  "Fair presentment in

turn requires the petitioner to assert his federal claim through one complete round of state-court

review, either on direct appeal of his conviction or in post-conviction proceedings."  *Simpson,*

458 F.3d at 593 (citation omitted).  "A habeas petitioner who has exhausted his state court

remedies without properly asserting his federal claim at each level of state court review has

procedurally defaulted that claim."  *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004).  In

addition, a habeas claim is procedurally defaulted when the state court did not address the

petitioner's federal claim because the petitioner failed to meet independent and adequate state

court's procedural requirements.  *Stewart v. Smith,* 536 U.S. 856, 860-61, 122 S.Ct. 2578, 153

L.Ed.2d 762 (2002); *see also Coleman v. Thompson,* 501 U.S. 729, 750, 111 S.Ct. 2546, 115

L.Ed.2d 640 (1991).

A habeas petitioner may overcome procedural default by demonstrating cause for the

default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750. The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

**III.     Habeas Claims Related to Harris' Death Sentence**

On January 11, 2003, former Illinois Governor George Ryan commuted Harris' death sentence to natural life in prison without the possibility of parole as part of the governor's blanket commutation of all Illinois death sentences. As discussed above, the Illinois Appellate Court concluded that Governor Ryan's commutation of Harris' sentence effectively removed his judicially imposed death sentence and replaced it with an essentially unreviewable executively imposed one. *See People v. Harris,* 357 Ill.App.3d 330, 333, 293 Ill.Dec. 719, 828 N.E.2d 1217 (Ill. App. Ct. 2005). Specifically, the Illinois Appellate Court reasoned that because Harris "was no longer serving a judicially imposed sentence, the separation of powers constitutionally divided between the executive and judicial branches barred us from meddling with the terms and conditions of the defendant's newly commuted sentence, rendering moot the sentencing issue he had raised on appeal." *Id.* Based on the Illinois Appellate Court's determination, Respondent argues that Harris' capital sentencing claims in his habeas petition are moot.

The Seventh Circuit, however, has held that even when the Governor has commuted a habeas petitioner's death sentence to natural life imprisonment without the possibility of parole,

the petitioner's sentencing claims are not moot because the statutory minimum sentence for first degree murder under Illinois law is 20 years and not natural life imprisonment. *See Simpson,* 458 F.3d at 595 (citing 720 ILCS 5/9-1(b)(6); 730 ILCS 5/5-8-1(a)(1)(a)); *see also Madej v. Briley,* 371 F.3d 898, 899 (7th Cir. 2004) ("Constitution supersedes any incompatible state principles."). As the *Madej* decision explained, "[a] full remedy for the constitutional shortcoming at the original sentencing hearing entails allowing Madej to seek that lower sentence now." *Id.* at 899. In short, Harris' federal constitutional claims concerning his capital sentencing hearing are not moot based on the Supremacy Clause of the United States Constitution.

Based on the Seventh Circuit decisions in *Simpson* and *Madej*, the Court also rejects Respondent's argument that Harris has "forfeited" his claim of ineffective assistance of sentencing counsel by seeking executive clemency from the Governor of Illinois while his post-conviction challenge to his death sentence was still pending. The *Simpson* court has already rejected this argument. *See Simpson,* 458 F.3d at 596 ("Simpson's clemency bid had no discernable substantive effect because Governor Ryan commuted death sentences whether or not commutation was sought"). Moreover, Harris has exhausted his state court remedies and the Illinois Appellate Court did not deny his claim based on an independent and adequate state court procedural ground as Respondent suggests. *See Stewart,* 536 U.S. at 860-61; *Coleman,* 501 U.S. at 750. Thus, the Court will address Harris' capital sentencing claims.

## ANALYSIS

### I.    Ineffective Assistance of Counsel

Harris brings five separate bases for his ineffective assistance of trial counsel claim. The

clearly established Supreme Court law that applies to Harris' ineffective assistance of counsel claim is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish constitutionally ineffective assistance of counsel, Harris must show that (1) his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694 ("a reasonable probability is a probability sufficient to undermine confidence in the outcome"); *see also Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). If Harris fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See Strickland,* 466 U.S. at 697; *Amerson v. Farrey,* 492 F.3d 848, 851 (7th Cir. 2007).

## A.      Failure to Investigate and Present Mitigation Evidence at Capital Sentencing

Harris first maintains that his trial counsel was constitutionally ineffective because counsel failed to investigate and present mitigating evidence at the second stage of his capital sentencing hearing. As discussed, in reviewing the Circuit Court's denial of Harris' post-conviction petition, the Supreme Court of Illinois concluded that Harris made a substantial showing that his trial counsel was ineffective for failing to investigate and produce mitigation evidence at his death sentencing hearing. Consequently, the Supreme Court of Illinois remanded Harris' case to the Circuit Court of Cook County for an evidentiary hearing on this issue. That evidentiary hearing never occurred because after Governor Ryan commuted Harris' death sentence to natural life imprisonment without the possibility of parole, the Illinois Appellate Court concluded that Harris' sentencing claim based on his counsel's failure to investigate and present mitigation evidence was moot. *See Harris III,* 357 Ill.App.3d at 336-37. As discussed,

12

the Seventh Circuit's decisions in *Simpson* and *Madej* teach otherwise. *See Simpson,* 458 F.3d at 595; *Madej,* 371 F.3d at 899. The Court will thus address Harris' habeas claim based on his attorney's ineffective assistance of counsel at his capital sentencing hearing.

In his post-conviction appeal, Harris argued that if his trial counsel, Dennis Doherty, had reviewed the pretrial investigation reports and performed the most minimal investigation into mitigation evidence, Doherty would have discovered that Harris suffered from severe depression, dependant personality disorder, and organic brain disorder. *See Harris II,* 206 Ill.2d at 320. Harris also argued that "Doherty failed to investigate and present evidence concerning his personal and family history, including the history of drug and alcohol abuse, emotional neglect and possible physical abuse." *Id.* Furthermore, Harris asserted "that Doherty failed to present evidence regarding his rehabilitative potential to rebut the State's evidence of future dangerousness." *Id.* In support of his arguments, Harris relied on Doherty's affidavit, which states in relevant part:

> I never seriously considered that his case was a death penalty case in the sense that it ever occurred to me that a death sentence might actually be imposed.
>
> * * *
>
> I never investigated David's case to develop evidence for purposes of a capital sentencing hearing. My failure to investigate was not based on facts that led me to conclude no investigation was necessary, to the contrary, my failure to investigate was based entirely upon my own feeling that David's case didn't merit imposition of the death penalty, and that I hadn't received any "signals" to the contrary. In short, my failure to investigate this aspect of David's case was neither a strategic nor a tactical decision.

*Id.*

### 1. Performance Prong

With respect to the *Strickland* performance prong, a court's review of an "attorney's

performance is 'highly deferential' and 'reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007) (quoting *Strickland*, 466 U.S. at 689); *see also Johnson v. Loftus,* 518 F.3d 453, 457 (7th Cir. 2008). In the context of death penalty cases, courts look to the ABA Standards for Criminal Justice and the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases for the prevailing norms of practice in assessing counsel's reasonable professional judgment. *See Canaan v. McBride,* 395 F.3d 376, 384 (7th Cir. 2005) (citing *Strickland*, 466 U.S. at 688). "The ABA Guidelines provide that investigations into mitigating evidence 'should comprise efforts to discover ***all reasonably available*** mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (emphasis in original) (citation omitted); *see also Strickland*, 466 U.S. at 688 (ABA standards are guides to determine what is reasonable).

When analyzing whether counsel's performance "fell below an objective standard of reasonableness," the Supreme Court of Illinois properly identified the relevant, clearly established United States Supreme Court authority under *Strickland*.[2] *See Williams v. Taylor,* 529 U.S. at 390. In addition, the Illinois court reasonably applied *Strickland* to the facts of this

---

[2] Even though the Supreme Court of Illinois did not discuss *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), under AEDPA, the state court need not cite nor be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts" established Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007).

case.  More specifically, based on Doherty's post-conviction affidavit and other evidence in the record, the Supreme Court of Illinois discussed Doherty's performance as follows:

> [I]n this case defendant argues that Doherty was woefully unprepared for the capital sentencing hearing because he did not consider defendant a serious candidate for the death penalty.  Doherty's failure to present evidence in mitigation was not a strategic choice, but rather an omission due to his own lack of preparation.  Doherty's failure to investigate and present evidence in mitigation produced an unreliable and unjust result.  He failed to investigate potential sources of mitigation clearly contained in the pretrial investigation report.  The pretrial report indicates that defendant was treated for depression in 1994 and prescribed psychotropic medicine for a period of five months before he refused to continue treatment.  The pretrial report states that defendant consumed a pint of hard liquor and a half ounce of marijuana on a weekly basis.  Doherty failed to make even initial inquiries into these matters.  Furthermore, although defendant denied a history of physical or emotional abuse, the pretrial report indicated that he described his childhood as "rough."  Again, Doherty never investigated or contacted individuals regarding this potential mitigating evidence.

*Harris II,* 206 Ill.2d at 322 (internal citations omitted).

In sum, the Supreme Court of Illinois' conclusion that Doherty's performance fell below an objective standard of reasonableness was not contrary to or an unreasonable application of *Strickland*.  *See Gilbert,* 488 F.3d at 790 (state court decision must be "well outside the boundaries of permissible differences of opinion" to be objectively unreasonable); *Simpson,* 458 F.3d at 592 (state court's decision must be "at least minimally consistent with facts and circumstances of the case.").[3]  Specifically, Doherty admitted that he did not investigate Harris'

---

[3] Relying on *Davis v. Lambert,* 388 F.3d 1052, 1059-60 (7th Cir. 2004), Respondent argues that this ineffective assistance of counsel claim is governed by pre-AEDPA standards.  Respondent's reliance on *Davis* is misplaced because the issue in *Davis* concerned whether the petitioner's request for an evidentiary hearing was governed by 28 U.S.C. § 2254(e)(2) or pre-AEDPA standards.  *See id*. at 1059-60.  As such, the Respondent fails to address whether the Supreme Court of Illinois' decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court.  *See Williams,* 529 U.S. at 402-03; 28 U.S.C. § 2254(d)(1).

case for purposes of the capital sentencing hearing because he had a "feeling" that Harris' case did not merit the death penalty. *See Wiggins,* 539 U.S. at 524. Doherty's admission establishes that his actions were not the result of his reasonable professional judgment, but instead were well outside of the wide range of professionally competent assistance and in contradiction of the prevailing norms of practice for death penalty cases. *See Wiggins,* 539 U.S. at 534; *Strickland*, 466 U.S. at 690. In other words, Doherty's omissions were not due to any strategic choices, but instead were based on his subjective feeling that Harris' case was not one in which the death penalty should be imposed and that he did not get a "signal" from the judge or prosecutor that this case warranted the death penalty. Although the Supreme Court of Illinois concluded that Doherty's performance fell below an objective standard of reasonableness – and its decision was a reasonable application of *Strickland* – the Illinois court remanded this issue for an evidentiary hearing as discussed in further detail below. The Court first turns to the *Strickland* prejudice prong before discussing the need for an evidentiary hearing.

### 2. Prejudice Prong

To establish prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Wiggins,* 539 U.S. at 534. In discussing whether Harris was prejudiced by counsel's deficient performance, the Supreme Court of Illinois reasoned:

> In this case, evidence regarding defendant's depression, dependent personality disorder, organic brain damage and social background may have explained the aggravating evidence presented by the State and, more importantly, defendant's actions at the time of the crime. Particularly, the post-conviction exhibits suggest that defendant suffers from dependent personality disorder. Several individuals, including defendant's former academic advisor and one expert concluded that

defendant is a "follower not a leader," "easily led by his peers," "unwilling to make decisions without assistance from others," "in constant need of approval," "insecure," "an unwise follower," and "suffers from massive dependency."

Additionally, a review of the sentencing transcript reveals that the trial judge was influenced by the lack of mitigation evidence:

> "I started out with the feeling that I would attempt to look at everything in the best eye possible to find something mitigating in Mr. David Harris.
> * * *
> I was listening to the arguments of the defense saying, you know that David had this problem where three people died in his family, and then he had no role models * * *.
> * * *
> I am suppose to think that David Harris acted this way only because somebody else told him, I don't think so. I think that David Harris acted on his own volition.

These comments clearly reveal a connection between the judge's imposition of the death penalty and Doherty's failure to present any mitigating evidence. We cannot say that the mitigation evidence contained in the post-conviction record could not have altered the determination that there was no evidence that mitigated against the imposition of the death sentence. Doherty's deficient performance, and the weight of the missing evidence in mitigation, make a substantial showing that Doherty's performance constituted ineffective assistance of counsel. Doherty's failure to investigate and present evidence in mitigation may have so undermined the proper function of the adversarial system as to have produced an unjust result and raises serious doubts regarding the propriety of defendant's sentence.

*Harris II,* 206 Ill.2d at 323-24 (internal citations omitted).

In its *Strickland* prejudice prong analysis, the Supreme Court of Illinois stopped short of concluding that after balancing the aggravating and mitigating factors, the death penalty was not warranted in this matter. *See Strickland,* 466 U.S. at 695; *see also Williams,* 529 U.S. 397-98. Instead, the Supreme Court of Illinois reversed the Circuit Court's dismissal of Harris post-conviction petition and remanded the matter for an evidentiary hearing concerning this claim. The Supreme Court of Illinois explained its decision to remand for an evidentiary hearing as

follows:

> Defendant requests that this court remand the matter for a new sentencing hearing, rather than remand the matter to the circuit court for an evidentiary hearing. Although the record clearly makes a showing that Doherty's performance was deficient and that his performance, or lack thereof, prejudiced defendant, we decline to grant a new sentencing hearing absent an evidentiary hearing. The circuit court, in the context of an evidentiary hearing, offers the more appropriate forum to address Doherty's alleged ineffective representation. This is true because, although there is no evidence that Doherty willfully committed reversible error, a court should be critical of conduct designed to disrupt the appropriate administration of justice. Thus, while counsel is obligated to admit that he or she negligently represented a defendant, his or her obligation does not end with the filing of an affidavit. The State has the right to attack the factual basis of the affidavit, and one method to attack the credibility of an affidavit is through cross-examination during the course of an evidentiary hearing. This ensures that counsel, in their zeal to advocate for their client, do not betray their obligation to the court. For this reason, we decline to grant defendant a new sentencing hearing absent an evidentiary hearing.

*Harris II,* 206 Ill.2d at 324. Based on the Illinois court's remand for an evidentiary hearing, both parties argue that if the Court cannot address this claim on the record before it, the Court should hold an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). The Court agrees.

### 3. Evidentiary hearing

Federal habeas courts are not an alternative forum for trying issues and facts that a habeas petitioner did not pursue at the state court level. *See Williams v. Taylor,* 529 U.S. 420, 432-34, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Holmes v. Buss,* 506 F.3d 576, 580 (7th Cir. 2007) ("only in rare cases is the district court required to conduct its own evidentiary hearing"). Section 2254(e)(2) provides that, if a habeas petitioner failed to develop a factual basis for a claim in state court, the federal habeas court "shall not hold an evidentiary hearing on the claim" unless the habeas petitioner can show that:

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*See* 28 U.S.C. § 2254(e)(2).

"Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Dalton v. Battaglia,* 402 F.3d 729, 736 (7th Cir. 2005) (citations and internal quotations omitted). If Harris "establishes that he was diligent in his attempts to develop the factual record in the state court, he does not have to satisfy the remaining provisions of § 2254(e)(2) in order to obtain an evidentiary hearing." *Id.* (citation omitted); *see also Price v. Thurmer,* 514 F.3d 729, 733-34 (7th Cir. 2008). In other words, if Harris can demonstrate that the failure to develop a factual record in the state court was not his fault, the strict standards under Section 2254(e)(2) do not apply. *See Williams,* 529 U.S. at 432-34.

Here, the Respondent concedes that Harris was unable to develop the factual basis of his ineffective assistance of counsel claim in state court because of intervening circumstances, namely, that Governor Ryan commuted his death sentence to natural life and that the state court mooted his capital sentencing claims. As such, to establish that an evidentiary hearing is warranted, Harris need only allege "facts which, if proved, would entitle him to relief" and that the state courts "never considered the claim in a full and fair hearing." *Richardson v. Briley,* 401 F.3d 794, 800 (7th Cir. 2005) (citations omitted). Harris has met this standard because the

Circuit Court never held the evidentiary hearing concerning this ineffective assistance of counsel claim. Harris has also set forth allegations, if proved, that would entitle him to a new sentencing hearing. Accordingly, the Court grants Harris' request for an evidentiary hearing on the issue of whether his attorney provided constitutionally ineffective assistance of counsel for failing to investigate and present mitigation evidence at the second stage of his capital sentencing hearing.

**B.      Concession of Eligibility for Death Penalty**

**1.      *Cronic* Standard**

Next, Harris argues that his trial counsel was constitutionally ineffective because he conceded Harris' eligibility for the death penalty. The Court first addresses Harris' pro se argument that the Supreme Court of Illinois erred in concluding that trial counsel was not ineffective for conceding his death penalty eligibility because the Supreme Court of Illinois relied on the standard set forth in *Strickland* instead of the standard under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Cronic* – which the United States Supreme Court decided on the same day as *Strickland* – "the Supreme Court recognized an exception to the *Strickland* standard for ineffective assistance of counsel for certain circumstances that are so egregiously prejudicial that ineffective assistance of counsel is presumed." *Hollenback v. United States*, 987 F.2d 1272, 1275 (7th Cir. 1993); *see also Bell v. Cone*, 535 U.S. 685, 695-96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Under the *Cronic* standard, prejudice may be presumed if: (1) the accused is denied the presence of counsel at a critical stage in proceedings; (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; or (3) counsel is called upon to render assistance under circumstances where competent counsel very likely could not. *See McDowell v. Kingston,* 497

F.3d 757, 761-62 (7th Cir. 2007) (citing *Cronic*, 466 U.S. at 659-60); *see also Florida v. Nixon*, 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (*Cronic* is narrow exception to *Strickland*); *Wright v. Van Patten,* 128 S.Ct. 743, 746 (2008) (per curiam) (same).

In his habeas petition and memoranda, Harris fails to articulate why his ineffective assistance of counsel claim falls under the *Cronic* standard. *See McDowell,* 497 F.3d at 761-62. Meanwhile, the Supreme Court of Illinois concluded that the *Cronic* standard did not apply because Harris' attorney contested Harris' guilt at trial and at the sentencing hearing, although his attorney conceded that the first degree murder and attempted armed robbery convictions qualified Harris for the death penalty. *See Harris I*, 182 Ill.2d at 154; *see also Bell v. Cone*, 535 U.S. at 696-97 ("When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete.").

Although Harris asserts that the *Cronic* standard is applicable, his argument focuses on the *Strickland* standard, discussed in detail below. More importantly, without any cogent argument for why *Cronic* applies under the circumstances, Harris has failed in his burden of establishing that the Supreme Court of Illinois unreasonably applied *Cronic* to the facts of his case or that the Illinois court's decision was contrary to *Cronic. See Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam); *Daniels v. Knight,* 476 F.3d 426, 433 (7th Cir. 2007). The Court thus turns to the Illinois court's application of the *Strickland* standard.

## 2. *Strickland* Standard

As mentioned, Harris argues that his trial counsel was constitutionally ineffective for

conceding his eligibility for the death penalty even though the State never specified which

aggravating factor it sought to prove and he never consented on the record to this concession.

The Supreme Court of Illinois determined Harris' claim based on the *Strickland* standard:

> We believe that the State established the existence of the aggravating circumstance defined by section 9-1(b)(6) of the Criminal Code of 1961, the commission of first degree murder in the course of a specified felony, here attempted armed robbery. 720 ILCS 5/9-1(b)(6) (West 1994). Although the State did not specifically cite section 9-1(b)(6) either in its written motion for a capital sentencing hearing or in court during the first stage of the hearing, the record shows clearly that section 9-1(b)(6) served as the basis for the eligibility determination. At the hearing, the prosecutor referred to the defendant's convictions for first degree murder and attempted armed robbery, which together would be sufficient to establish eligibility for the death penalty under section 9-1(b)(6). In addition, the judgment order entered the next day by the judge cites section 9-1(b)(6) as the basis for the eligibility determination.

> Moreover, we conclude that the proceedings adequately established the defendant's eligibility for the death penalty under section 9-1(b)(6). The State introduced into evidence the defendant's birth certificate, establishing that he had reached the age of 18 at the time of the murder (720 ILCS 5/9-1(b) (West 1994)), and the defendant's convictions in this case for first degree murder and attempted armed robbery. This information was sufficient to establish, beyond a reasonable doubt, the existence of the aggravating circumstance found in section 9-1(b)(6).

> ...

> In determining, under *Strickland,* whether counsel's performance at a capital sentencing hearing was prejudicial to the defendant, a court must ask whether there is a reasonable likelihood that the result of the hearing would have been different. We do not believe that the eligibility determination would have been different if counsel had challenged the State's evidence. The verdicts returned by the jury clearly established the defendant's commission of the murder in the course of attempted armed robbery. These were certainly sufficient also to establish the defendant's eligibility for the death penalty under section 9-1(b)(6).

*Harris I*, 182 Ill.2d at 152-55.

Again, the Supreme Court properly identified the relevant, clearly established Supreme

Court authority under *Strickland*. Moreover, the Illinois court reasonably applied *Strickland* to

the facts of this case when it concluded that Harris' eligibility was established based on his convictions for first degree murder and attempted armed robbery. Proof of Harris' convictions – especially his attempted armed robbery conviction that constituted the aggravating factor under the Illinois death penalty statute – established beyond a reasonable doubt that Harris was eligible for the death penalty. *See* 720 ILCS 5/9-1(b)(6). Therefore, the Illinois court's conclusion was not contrary to or an unreasonable application of *Strickland*. *See Gilbert,* 488 F.3d at 790 (state court decision must be "well outside the boundaries of permissible differences of opinion" to be objectively unreasonable). Meanwhile, Harris' argument that the Supreme Court of Illinois erred because it only focused on the *Strickland* prejudice prong is without merit because if a defendant does not make a proper showing under one of the *Strickland* prongs, the court need not consider the other. *See Strickland,* 466 U.S. at 697 (court need not address both components if defendant makes insufficient showing on one); *Amerson,* 492 F.3d at 851 (same). Therefore, Harris' *Strickland* claim based on the eligibility requirement under the Illinois death penalty statute does not merit habeas relief.

Finally, Harris argues that the Supreme Court of Illinois "failed to recognize that a mens rea was nessary [sic] to be found beyond a reasonable doubt to establish death eligibility under 9-1-(b)(6)." (R. 13-1, Habeas Pet., at 4.) Harris' final argument is procedurally defaulted because he did not raise this claim for one round of state court review. *See Simpson,* 458 F.3d at 593; *Lewis*, 390 F.3d at 1026. Harris offers no exception to this default, *see Coleman,* 501 U.S. at 450, and thus the Court cannot determine this claim on collateral review.

### C.     Evidence of Other Crimes and Bloodstain Evidence

Next, Harris maintains that his trial counsel was constitutionally ineffective because

counsel did not move to bar evidence that Harris was riding in a stolen vehicle on the night of the murder and that there was a bloodstain in that vehicle. On direct appeal, the Supreme Court of Illinois explained:

> The defendant [argues] that trial counsel was ineffective for failing to object to the testimony about the ownership of the Mercedes. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), provides a two-part test for evaluating claims of ineffective assistance of counsel. A defendant alleging ineffective assistance must generally demonstrate both that counsel's representation was deficient and that he was prejudiced as a result. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In reviewing a claim of ineffective assistance, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

> In the present case, even if we assume that trial counsel erred in failing to object to the evidence challenged here, we conclude that the defendant is unable to establish the prejudice portion of the *Strickland* standard. As we noted in our preceding discussion of plain error, evidence of the defendant's guilt for the charged offenses was overwhelming, consisting of Theresa Barnes' and Theodore Traylor's eyewitness testimony and of the defendant's confession to the crimes. Similarly, we do not agree with the defendant's further contention that defense counsel's inquiry concerning the red spot on the front seat of the Mercedes was so prejudicial that counsel can be said to be ineffective.

*Harris I,* 182 Ill.2d at 137.

Here, the Supreme Court of Illinois concluded that even if Harris' trial counsel erred in failing to object to the evidence that Harris was in a stolen vehicle on the night of the murder and that there was a bloodstain in that vehicle, Harris was not prejudiced by any such error because evidence of his guilt was overwhelming. *See Strickland,* 466 U.S. at 694. As the Illinois court specifically discussed, "defendant's guilt for the charged offenses was overwhelming, consisting of Theresa Barnes' and Theodore Traylor's eyewitness testimony and of the defendant's

confession to the crimes." *Harris I*, 182 Ill.2d at 137. Based on this evidence, the Supreme

Court of Illinois' conclusion was not contrary to or an unreasonable application of *Strickland*.

Put differently, the Illinois court's conclusion, which is based on two eyewitness to the murder

and Harris' confessions, does not lie "well outside the boundaries of permissible differences of

opinion" and is "minimally consistent with the facts and circumstances of this case." *See*

*Gilbert,* 488 F.3d at 790; *Simpson,* 458 F.3d at 592. Thus, Harris' *Strickland* claim based on the

stolen vehicle and bloodstain evidence fails.

### D.      Failure to Move to Suppress Photographic Lineup

Harris also asserts that his trial counsel was constitutionally ineffective for failing to

move to suppress an allegedly suggestive photographic lineup. In addressing Harris' claim, the

Supreme Court of Illinois explained:

> Under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064,
> 80 L.Ed.2d 674, 693 (1984), a defendant alleging ineffective assistance of counsel
> must show both a deficiency in counsel's performance and prejudice resulting
> from that deficiency. Prejudice in the context of the failure to seek suppression of
> evidence requires defendant to show that the unargued suppression motion was
> meritorious and that there is a reasonable probability that the verdict would have
> been different without the excludable evidence. *See Kimmelman v. Morrison,* 477
> U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 319 (1986); *People v.*
> *Moore,* 171 Ill.2d 74, 108, 215 Ill.Dec. 75, 662 N.E.2d 1215 (1996). We need not
> determine here whether counsel was deficient in failing to seek suppression of
> Theresa Barnes' lineup identification, for we believe that the defendant cannot
> show prejudice by counsel's inaction. The evidence of the defendant's guilt in
> this case was overwhelming. Barnes could have testified at trial even if the lineup
> identification had been suppressed; it appears from Barnes' testimony at trial that
> her in-court identification of the defendant as the offender was not the product of
> the lineup procedures but instead was based on her observations at the time of the
> offenses. *See People v. Enis,* 163 Ill.2d 367, 398-99, 206 Ill.Dec. 604, 645
> N.E.2d 856 (1994). Accordingly, invalidation of the lineup would not necessarily
> have resulted in the exclusion of Barnes' identification of the defendant as the
> shooter. But even without that witness' testimony, there would remain
> overwhelming evidence of the defendant's guilt. Theodore Traylor also provided
> an eyewitness account of the defendant's commission of the offenses, and the

defendant gave authorities two inculpatory statements, in which he confessed his role in the crimes. On this record, then, we are unable to conclude that the defendant was prejudiced by counsel's failure to seek the suppression of the lineup identification, and the defendant's allegation of ineffective assistance therefore must fail.

*Harris I*, 182 Ill.2d at 146-47.

The Supreme Court of Illinois correctly identified the appropriate standards under

*Strickland* and *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91L.Ed.2d 305

(1986), in which the United States Supreme Court instructs:

Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman,* 477 U.S. at 375.

Focusing on these standards, the Illinois court concluded that Harris did not establish prejudice because of the overwhelming evidence of his guilt and that the relevant eyewitness' in-court identification of Harris was based on her observations at the time of the offenses. Stated differently, the Illinois court concluded that suppression of Barnes' lineup identification would not have changed the outcome of Harris' trial. Indeed, there was overwhelming evidence of Harris' guilt, including eyewitness testimony and his own confessions. Accordingly, the Supreme Court of Illinois reasonably applied *Strickland* to the facts and circumstances of this case. *See Gilbert,* 488 F.3d at 790; *see also Julian v. Bartley,* 495 F.3d 487, 494 (7th Cir. 2007) ("state court's application of *Strickland* must be objectively unreasonable and not merely erroneous."). Therefore, Harris' claim based on the allegedly suggestive photographic lineup does not merit habeas relief.

### E.	Failure to Interview or Call Available Alibi Witnesses

Harris also argues that his trial counsel was constitutionally ineffective because he failed to call or interview available alibi witnesses.  On post-conviction appeal, the Supreme Court of Illinois addressed Harris' argument as follows:

> Defendant asserts that ... we should find that he received ineffective assistance of trial counsel because his attorney failed to investigate and present his alibi evidence that at the time of the shooting he was at home with his brothers. Defendant argues that his trial attorney's deficient performance is the reason this evidence was not discovered before trial and presented in his defense.

> We disagree.  As we noted previously, defendant is clearly the source of this evidence and, yet, does not explain why he failed to inform his attorney about the existence of his alibi defense before trial.  He cannot now blame his attorney for failing to investigate and discover this evidence.  Moreover, given all of the evidence that was before the jury, defendant does not demonstrate that the result of the proceeding would have been different.  We affirm the circuit court's dismissal of this claim without an evidentiary hearing.

*Harris II*, 206 Ill.2d at 306.

Harris now contends that trial counsel was actually aware of the existence of this alibi evidence, but Harris does not rebut the Illinois court's factual findings with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007).  In any event, even if trial counsel were aware of any such alibi evidence, the Supreme Court of Illinois did not unreasonably apply the *Strickland* prejudice prong to the facts of this case.  As discussed throughout its decision, the Supreme Court of Illinois concluded that the evidence of Harris' guilt was so overwhelming, Harris could not demonstrate that the result of the guilt-phase of his trial would have been different.  Specifically, the Supreme Court articulated that:

> Defendant was convicted based upon the following evidence: defendant's written statement in which he confessed to personally shooting the victim; the testimony

of an eyewitness, Theresa Barnes, who identified defendant as the shooter; and the testimony of codefendant Theodore Traylor, who stated that defendant was the shooter. Importantly, the statements of Daniels, McClinton, Traylor, Barnes, and defendant describe in strikingly similar detail the circumstances of the crime.

*Harris II,* 206 Ill.2d at 302.

Because the Supreme Court of Illinois' decision was not contrary to or an unreasonable application of *Strickland*, habeas relief based on this ineffective assistance of counsel claim is not warranted.

## II.    Suppression of Involuntary Statements

In Harris's next habeas claim, he argues that he was denied his right to due process because incriminating statements attributed to him were involuntarily obtained after he was illegally removed from the Cook County Jail to a City Police Jail without lawful authority in violation of the Illinois Habeas Corpus Act and the Cook County Jail Act. *See* 735 ILCS 5/10-131; 730 ILCS 125/4. In addressing this argument, the Supreme Court of Illinois reasoned:

> The defendant next argues that the trial judge erred in denying a motion he made to suppress his inculpatory statements. The defendant contends that the statements warranted suppression because they were made after he was illegally transferred from the Cook County jail and placed in the custody of the Chicago police department. Before this court, the defendant contends that the transfer occurred in violation of the Illinois Habeas Corpus Act. The defendant maintains that suppression of his two statements – the oral one he gave to the police officers, and the written one he later provided to the assistant State's Attorney – is an appropriate sanction for this statutory violation.
>
> After Detectives Cross and Bernatek obtained the jail letter, they went to the intake unit of the county jail, where they were informed that the defendant was then in court. The detectives went to the specified courtroom and waited for the conclusion of the proceedings on the defendant's case, a probation violation, at which the defendant was represented by appointed counsel. The defendant was then taken back to the jail, and the detectives returned to the intake unit. The detectives presented the letter to personnel there and then removed the defendant from the jail and transported him to Area 2 headquarters. At Area 2, the defendant was placed in a lineup, and he later gave authorities two statements

regarding his role in the present offenses. The detectives returned the defendant to the Cook County jail early the next morning. At the conclusion of the hearing, the trial judge denied the suppression motion. With respect to the issue raised here, the judge concluded that the means by which the detectives obtained custody of the defendant for their investigation did not implicate any constitutional rights. The judge also rejected the defendant's other grounds on which the defense sought to suppress the statements, including the defendant's allegation that he was physically mistreated while at Area 2.

...

It should be noted that the defendant does not contend here that the questioning of him at Area 2 violated his fifth amendment right to counsel. The defendant's exercise of his sixth amendment right to counsel at the probation violation hearing did not extend to other, as yet uncharged, offenses and did not preclude, on fifth amendment grounds, questioning on unrelated offenses

Without deciding precisely what sort of protected interest the Habeas Corpus Act might give rise to and what sort of remedy is necessary for its violation, we do not believe that suppression is an appropriate consequence here. Neither the Habeas Corpus Act nor the County Jail Act is aimed at the sort of police misconduct that would warrant suppression of the defendant's statements. Indeed, we note that the statutorily prescribed penalty for a violation of section 10-131 of the Habeas Corpus Act is found in its concluding sentence, which provides, "If any person removes, or causes to be removed any prisoner so committed, except as above provided, he or she shall forfeit to the party affected a sum not exceeding $300." Here, the trial judge rejected the defendant's allegations that he was mistreated while in police custody at Area 2 headquarters. Moreover, the police had legitimate reasons to transfer the defendant to Area 2, where the investigation was centered and where they could conduct a lineup.

*Harris I,* 182 Ill.2d at 148-50 (internal citations omitted).

Harris' claim that the Supreme Court of Illinois erred in interpreting the Illinois Habeas Corpus Act and the County Jail Acts is not a cognizable claim on habeas review because it concerns the Illinois court's application of Illinois law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Specifically, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* As such, whether the Supreme Court of Illinois erred in the

applying Illinois statutes is not a cognizable habeas claim. *See id.* ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) ("errors of state law in and of themselves are not cognizable on habeas review").

Nevertheless, in his pro se filings before the Court, Harris argues that the Illinois Habeas Corpus Act and the County Jail Act create a due process right under the Fourteenth Amendment and that the State's alleged violation of this right warrants suppression of his inculpatory statements. In support of his argument, Harris relies upon *Marioneaux v. Colorado State Penitentiary,* 465 F.Supp. 1245 (D.C. Colo. 1979). In *Marioneaux*, the class plaintiffs – who were inmates in a maximum security unit at the state penitentiary – brought an action under 42 U.S.C. § 1983 alleging that prison officials placed them in punitive and administrative segregation without due process of law under the Fourteenth Amendment. *Id.* at 1246. The District Court of Colorado thus focused on the constitutionality of the prison officials' disciplinary actions and the scope of procedural safeguards required by the Fourteenth Amendment when prisoners are transferred to more restrictive conditions of confinement. *See id.* at 1247. In this context, the district court reasoned that "if state law creates procedural rights for inmates before they can be transferred to a more restrictive status, the constitution protects these rights rooted in state law." *Id.*

Harris' reliance on a District Court of Colorado case is misplaced because under the AEDPA, the Court's focus is whether the Supreme Court of Illinois' decision "resulted in a decision that was contrary to, or involved an unreasonable application of, ***clearly established Federal law, as determined by the Supreme Court of the United States***." 28 U.S.C. §

2254(d)(1) (emphasis added).  As such, Harris' reliance on the *Marioneaux* decision cannot be the basis for a finding that the Supreme Court of Illinois' decision involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *See Sweeney v. Carter,* 361 F.3d 327, 333-34 (7th Cir. 2004); *see also White v. Indiana Parole Bd.,* 266 F.3d 759, 763 (7th Cir. 2001) ("Only the [Supreme] Court's own decisions, and not glosses applied by other tribunals, may be enforced on collateral review.").

Harris does rely on a Supreme Court case to support his claim that the Illinois Habeas Corpus Act and the County Jail Act create a due process right and that the State's violation of this right warrants suppression of his inculpatory statements.  *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  In *Wolff*, the Supreme Court set forth certain procedural due process requirements for prison disciplinary hearings that may result in the loss of good time credits.  *See id.* at 543.  Even the most generous interpretation of *Wolff* does not support Harris' argument that the two Illinois statutes create a due process right requiring suppression of his inculpatory statements.  Finally, as the Supreme Court of Illinois noted, Harris did not bring his claim under his Fifth Amendment right to counsel as articulated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  Therefore, Harris' argument based on the Illinois statutes fails.

## III.    Introduction of Evidence Concerning Stolen Vehicle

Harris also maintains that his due process right to a fair trial was violated when the State introduced testimony that the vehicle Harris was riding in on the night of the murder was stolen. In discussing Harris' claim on direct appeal, the Supreme Court noted that defense counsel did not object to the introduction of the stolen vehicle evidence, and thus the Illinois court reviewed

the introduction of this evidence in the context of the plain error doctrine:

> Supreme Court Rule 615(a) provides that, on review, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill.2d R. 615(a). The plain error doctrine therefore provides a limited exception to the normal rule of waiver, and the doctrine may be invoked when either the evidence is closely balanced or the alleged error is so fundamental that it denied the defendant a fair trial. We do not believe that either condition obtains here. The evidence of the defendant's guilt was overwhelming. Theresa Barnes and Theodore Traylor provided eyewitness testimony of the defendant's commission of the offenses. Moreover, the defendant's statements to authorities also detailed his involvement in the crimes. Nor do we believe that introduction of the evidence challenged here affected a fundamental right. Without determining here whether the evidence was properly admitted to show the steps in the investigation and to account for the delay in the defendant's apprehension and arrest, we do not believe that its introduction jeopardized the defendant's right to a fair trial. On this record, then, we are unable to conclude that introduction of the evidence suggesting that the Mercedes used in the crimes was stolen rose to the level of plain error.

*Harris I*, 182 Ill.2d at 136 (internal citations omitted).

Respondent argues that because Harris' attorney did not object to the introduction of the stolen vehicle evidence, this claim is procedurally defaulted based on independent and adequate state law procedural grounds. *See Gomez v. Jaimet,* 350 F.3d 673, 678 (7th Cir. 2003) (under Illinois law, waiver operates as independent and adequate state ground barring federal habeas review). In general, federal courts cannot review questions of federal law if the state court decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *See Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In other words:

> When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed. Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim.

*Miranda v. Leibach*, 394 F.3d 984, 99-92 (7th Cir. 2005) (internal citation omitted). When a state appellate court bases its decision on both the petitioner's procedural default and a review of the merits, a "petitioner's procedural default will bar federal habeas review only if the state court actually relied on that default as an independent basis for its decision." *Hampton v. Leibach,* 347 F.3d 219, 242 (7th Cir. 2003) (citing *Harris v. Reed*, 489 U.S. at 261-62). Thus, under the circumstances, the Court must determine whether the Supreme Court of Illinois' decision primarily relied on its merits determination, the procedural default, or a combination of both. *See Farmer v. Litscher,* 303 F.3d 840, 846 (7th Cir. 2002).

Although the Supreme Court of Illinois discussed Harris' waiver for failing to object to this evidence, the Supreme Court of Illinois structured its decision by addressing the merits of Harris' claim. *See Smith v. Battaglia,* 415 F.3d 649, 653 (7th Cir. 2005). Moreover, the Illinois court did not expressly decide this claim based on waiver at the exclusion of the merits determination. *See Harding v. Sternes,* 380 F.3d 1034, 1043-44 (7th Cir. 2004). Under these circumstances, Harris did not procedurally default this claim because the Supreme Court of Illinois' conclusion primarily relied on its merits determination. The Court thus turns to Harris' argument that he was denied a fair trial in violation of the due process clause of the Fourteenth Amendment.

Although Respondent maintains that Harris' argument is not cognizable on collateral review because the Supreme Court of Illinois was merely applying Illinois procedural law, the United States Supreme Court has held the following:

> Mere errors of law in the conduct of State trials afford no basis for relief under the
> Fourteenth Amendment, and a wide swath of discretion must be left to the State
> Courts in such matters. But when a conviction is secured by methods which
> offend elementary standards of justice, the victim of such methods may invoke

33

the protection of the Fourteenth Amendment because that Amendment guarantees
him a trial fundamentally fair in the sense in which that idea is incorporated in
due process.

*Irvine v. People of California,* 347 U.S. 128, 148, 74 S.Ct. 381, 98 L.Ed 561 (1954). In other

words, "[d]ue process does entitle a defendant to a fair trial; but only if the state court committed

an error so serious as to render it likely that an innocent person was convicted can the error be

described as a deprivation of due process." *Perruquet,* 390 F.3d at 510. In assessing Harris' fair

trial claim, the Court must consider whether "'but for the errors, the outcome of the trial

probably would have been different,' thus denying the petitioner his due process right to a

fundamentally fair trial." *Anderson v. Sternes,* 243 F.3d 1049, 1055 (7th Cir. 2001) (citation

omitted).

Here, the Supreme Court of Illinois' conclusion that the introduction of the stolen vehicle

evidence did not affect Harris' fundamental right to a fair trial based on overwhelming evidence

of Harris' guilt is not contrary to or an unreasonable application of clearly established federal

law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Again, the

Supreme Court of Illinois relied upon the overwhelming evidence supporting Harris' guilty

verdict. Thus, despite the alleged state court evidentiary error, the outcome of the guilt-phase

stage of Harris' trial would probably not have been different. *See Anderson,* 243 F.3d at 1055.

Consequently, Harris' claim that the stolen vehicle evidence denied him his due process right to

a fair trial does not merit habeas relief.

## IV.     Sufficiency of the Evidence

Next, Harris contends that the State failed to prove beyond a reasonable doubt that:  (1)

he committed attempted armed robbery; and (2) that the attempted armed robbery and first

degree murder convictions were improperly carved from the same physical act, thus his death penalty eligibility was derived from this improper double enhancement. The clearly established Supreme Court law that applies to this habeas claim is set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* holds that due process is satisfied if – when viewing the evidence in the light most favorable to the prosecution – "***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original). The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Courts defer to a factfinder's credibility determinations and will overturn verdicts only if "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Cummings,* 395 F.3d 392, 397 (7th Cir. 2005) (citation omitted).

In addressing Harris' claim that the State failed to prove him guilty of attempted armed robbery beyond a reasonable doubt because there was no evidence that he made a "substantial step" to commit armed robbery, the Supreme Court of Illinois stated:

> The defendant first argues that he was not proved guilty of the offense of attempted armed robbery. The indictment in this case alleged that the defendant took a substantial step toward the commission of armed robbery by ordering the victim from the car and shooting him. The defendant correctly observes that the prosecution failed to present any evidence that the defendant ordered the victim from the car, and the defendant therefore argues that he was not proved guilty of the offense. The defendant notes that, although Moore told the victim to exit the car, the defendant was not tried on an accountability theory.
>
> The defendant does not contend that the indictment is defective, or that there was a fatal variance between the language of the indictment and the evidence offered at trial. Indeed, it appears that the allegation in the indictment that the defendant ordered the victim from the car may be regarded as mere surplusage. *See People v. Coleman,* 49 Ill.2d 565, 571, 276 N.E.2d 721 (1971).

In evaluating a challenge to the sufficiency of evidence, a reviewing court must consider the evidence most favorably to the prosecution. *See People v. Young,* 128 Ill.2d 1, 48-50, 131 Ill.Dec. 86, 538 N.E.2d 461 (1989); *People v. Collins,* 106 Ill.2d 237, 261, 87 Ill.Dec. 910, 478 N.E.2d 267 (1985), quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). We believe that the evidence in the present case was sufficient to sustain the defendant's conviction for attempted armed robbery. According to the defendant's statements and the testimony of Theodore Traylor, the occupants of the vehicle, with the exception of Traylor, were discussing carjackings while they were driving around just before the victim's murder. The driver, Howard McClinton, expressed the view that older persons were less likely to be armed than younger persons, and that theory apparently motivated their selection of the victim in this case. After McClinton drove into the parking lot, Antoine Moore got out of the Mercedes and tried to open the door of the victim's car. When the victim's door did not open, Moore ordered the victim from his vehicle. When the victim refused to comply, Moore got back in the Mercedes. At that point the defendant got out of the car and fired a shot at the victim's window, shattering it. The defendant next fired a shot at the victim, striking him. Viewed in a manner most favorable to the prosecution, the evidence presented at trial was sufficient to establish the defendant's guilt for the offense of attempted armed robbery. The guilty parties had discussed carjacking and had selected a victim for that end. By firing a shot at the victim's car window, the defendant took a substantial step toward the planned offense of taking the victim's car.

*Harris I,* 182 Ill.2d at 132-33.

The Supreme Court of Illinois properly recognized *Jackson* as the clearly established Supreme Court authority. Further, the Illinois court – viewing the evidence in favor of the prosecution – considered evidence that Harris and others discussed carjackings right before the murder, one of the individuals in the Mercedes with Harris ordered the victim out of the car and, once the victim refused, Harris fired a shot at the car window and one at the victim. The Illinois court then concluded that when Harris fired a shot at the car window, he made a "substantial step" toward the planned offense of taking the car. Under the Illinois attempt statute, "[a] person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a).

Based on the Supreme Court of Illinois' correct identification of the clearly established Supreme Court authority in *Jackson v. Virginia,* and its subsequent application of *Jackson* to the facts and elements of attempted armed robbery, the Illinois court's decision was not contrary to *Jackson* or an unreasonable application of *Jackson* under the circumstances. Stated differently, viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of attempted armed robbery beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319. Therefore, Harris' due process argument based on the attempted armed robbery fails.

Harris also maintains that his attempted armed robbery and first degree murder convictions were improperly carved from the same physical act and that his death penalty eligibility was derived from this improper double enhancement. In discussing this argument, the Supreme Court of Illinois stated:

> The defendant makes the related contention that his convictions for first degree murder and attempted armed robbery were improperly based on the same physical act, the shooting of the victim by the defendant. Citing *People v. King,* 66 Ill.2d 551, 6 Ill.Dec. 891, 363 N.E.2d 838 (1977), the defendant contends that multiple convictions may not be based on the same act. What the defendant overlooks, however, is that he fired two shots at the victim: the first shot shattered the car window but did not strike the victim, and the second shot struck the victim in the head, killing him. While the defendant's conviction for first degree murder must be based on the second, fatal shot, his conviction for attempted armed robbery may be based on the first shot, as our preceding discussion makes clear. Thus, unlike the conduct in *People v. Johnson,* 154 Ill.2d 356, 370-72, 181 Ill.Dec. 926, 609 N.E.2d 294 (1993), which the defendant cites, discrete physical acts underlie each offense here. The defendant's separate convictions for murder and attempted armed robbery are therefore proper in this case. *People v. Rodriguez,* 169 Ill.2d 183, 188-89, 214 Ill.Dec. 451, 661 N.E.2d 305 (1996).

> The defendant's conviction for attempted armed robbery formed the basis for the trial judge's subsequent determination, under section 9-1(b)(6) of the Criminal Code of 1961 (720 ILCS 5/9-1(b)(6) (West 1994)), that the defendant

was eligible for the death penalty.  In a final argument involving the conviction for attempted armed robbery, the defendant contends that the conviction may not serve as a predicate for his eligibility under that statutory aggravating circumstance because doing so could result in an improper double enhancement of the offense of attempted robbery.  As we have just determined, however, the convictions for attempted armed robbery and first degree murder were based on separate acts.  Accordingly, the use of the offense of attempted armed robbery to establish the defendant's eligibility for the death penalty could not produce an improper double enhancement.

*Harris I,* 182 Ill.2d at 133-34.

Here, the Supreme Court of Illinois explained that because Harris fired two shots – one at the window of the victim's car and one that killed the victim – there were two separate physical acts.  More specifically, the first shot supported Harris' conviction for attempted armed robbery and the second shot supported Harris' conviction for first degree murder.  Therefore, the Illinois court concluded that Harris' convictions were not based on the same physical act.  Again, the Supreme Court of Illinois's decision is not contrary to or an unreasonable application of *Jackson* because any trier of fact could have found the essential elements of attempted armed robbery and first degree murder beyond a reasonable doubt.  *See Jackson,* 443 U.S. at 319; *United States v. Mendoza,* 510 F.3d 749, 752 (*Jackson's* highly deferential standard is nearly insurmountable).  Because there is sufficient evidence supporting both the attempted armed robbery and first degree murder convictions, habeas relief is not warranted based on this claim.

## V.      Due Process – Photographic Lineup

Finally, Harris contends that he was denied due process because the State lost the lineup photographs that eyewitness Barnes used to identify him.  The clearly established Supreme Court law that applies to this habeas claim is set forth in *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).  "*Youngblood* is relevant when the government has failed to

preserve evidence, but no more can be said of that evidence than that 'it could have been subjected to tests, the results of which might have exonerated the defendant.'" *Hubanks v. Frank,* 392 F.3d 926, 931 (7th Cir. 2004) (quoting *Youngblood,* 488 U.S. at 57-58). Under *Youngblood*, "failure to preserve evidence is not a violation of due process rights unless the defendant can demonstrate: (1) bad faith on the part of the government; (2) that the exculpatory value of the evidence was apparent before it was destroyed; and (3) that the evidence was of such a nature that the petitioner would be unable to obtain comparable evidence by other reasonably available means." *Hubanks,* 392 F.3d at 931.

The Supreme Court of Illinois addressed Harris' due process claim based on the State's loss of the photographs as follows:

> [T]he defendant argues that he was denied due process by the loss of photographs of the lineup, which depicted the six participants in the lineup. The defendant contends that the photographs could have bolstered his argument that the lineup was unfairly constituted. In *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." The defendant has not made that showing here. According to the testimony at trial, the photographs and report of the lineup could not later be retrieved from the records division of the police department and, it appears, were inadvertently lost. There is nothing to suggest here that the photographs and report of the defendant's lineup were treated differently than the records in any other case. Moreover, we have already determined that the defendant was not denied effective assistance of counsel by the failure to seek suppression of the lineup identification, and therefore we must also conclude that the loss of documentary evidence that might have supported a suppression motion had no significant impact on the defendant's case.

*Harris I,* 182 Ill.2d at 147.

The Supreme Court of Illinois properly recognized the controlling United States Supreme Court authority under *Youngblood*. Furthermore, the Illinois court's decision was not contrary to or an unreasonable application of *Youngblood* because Harris did not establish bad faith on the

part of the State, especially in light of the Supreme Court's conclusion that the photographs had been inadvertently lost. Based on the relevant facts of this case, the Supreme Court of Illinois' decision does not lie "well outside the boundaries of permissible differences of opinion." *Gilbert,* 488 F.3d at 790. Put differently, the Illinois court's conclusion was one of several equally plausible outcomes. *See Burgess v. Watters,* 467 F.3d 676, 681 (7th Cir. 2006). Therefore, Harris' due process claim based on the missing photographs fails.

## CONCLUSION

For these reasons, the Court grants Harris' request for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e) on his ineffective assistance of counsel claim based on counsel's failure to investigate and present mitigation evidence at the second phase of his capital sentencing hearing. The Court denies the remainder of Harris' claims in his habeas petition.

Dated: June 5, 2008

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**